UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

PHI AIR MEDICAL, LLC,

    Plaintiff,

vs.                                                        Case No. 18 CV 382 JAP/SCY

NEW MEXICO OFFICE OF SUPERINTENDENT
OF INSURANCE, and
JOHN G. FRANCHINI, Superintendent of Insurance
in his official capacity, and
JEREMY RODRIQUEZ-ORTEGA, Compliance Officer,
New Mexico Officer of Superintendent of Insurance, Managed
Health Care Bureau, in his official capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DISMISSING COMPLAINT AND COUNTERCLAIM WITHOUT PREJUDICE
## FOR LACK OF SUBJECT MATTER JURISDICTION

In DEFENDANT-COUNTERCLAIMANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 20) (Motion), Defendants the New Mexico Officer of Superintendent of Insurance (OSI) and John G. Franchini (Superintendent)[1] (together the OSI Defendants) ask the Court to dismiss Plaintiff PHI Air Medical, LLC's (PHI's) claims for declaratory judgment and injunction as set forth in the COMPLAINT (Doc. No. 1) (Complaint). The OSI Defendants ask the Court to grant declaratory judgment in their favor as requested in the ANSWER TO COMPLAINT [Doc. 1] AND COUNTERCLAIM FOR DECLARATORY JUDGMENT (Doc. No. 10) (Counterclaim). The Motion is fully briefed. *See* PHI's RESPONSE TO MOTION FOR

---

[1] The Court dismissed Defendant Rodriguez-Ortega from this case under Rule 21. *See* MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS DEFENDANT JEREMY RODRIQUEZ-ORTEGA PURSUANT TO FED. R. CIV. P. 21 (Doc. No. 38) and ORDER CORRECTING MEMORANDUM OPINION AND ORDER (Doc. No. 43).

1

JUDGMENT ON THE PLEADINGS (Doc. No. 28) (Response); and REPLY IN SUPPORT OF [20] DEFENDANTS-COUNTERCLAIMANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 29) (Reply).[2]

In the Complaint, PHI asks the Court to enter declaratory judgment that under the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1), the New Mexico insurance laws prohibiting the balance billing of air ambulance patients are preempted and unenforceable. PHI also asks the Court to enjoin the OSI Defendants from enforcing New Mexico insurance laws against PHI and other air ambulance providers. (Compl. at p.11.)

In the Counterclaim, the OSI Defendants allege that under the McCarran-Ferguson Act, 15 U.S.C. § 1012(b) (MFA), New Mexico insurance laws prohibiting balance billing of patients covered by managed health care plans remain valid because the state laws were enacted for the purpose of regulating the "business of insurance." *Id.*

Because the Court lacks subject matter jurisdiction over the claims in the Complaint and the Counterclaim, the Court will dismiss the Complaint and the Counterclaim without prejudice.

I. BACKGROUND

PHI is an air ambulance company registered in Louisiana and headquartered in Phoenix, Arizona. (Compl. ¶ 14.) PHI is certified as a Part 135 Air Carrier by the Federal Aviation Administration. (*Id.* ¶ 1, Exs. A & B.) PHI is licensed by the New Mexico Department of Health to provide air ambulance services to New Mexico residents from bases in Albuquerque, Socorro, and Grants, New Mexico. (*Id.*)

---

[2] The Court has also considered the NOTICE OF SUPPLEMENTAL AUTHORITY FOR [20] DEFENDANTS-COUNTERCLAIMANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 34) and the NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF RESPONSE BY PLAINTIFF/COUNTER-DEFENDANT'S (sic) TO MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 35).

A. R.W. transported from Grants, N.M. to Albuquerque, N.M.

On April 11, 2016, PHI provided emergency air transportation to R.W., a stroke patient, from Grants, New Mexico to Presbyterian Hospital in Albuquerque, New Mexico. (*Id.* ¶ 27.) R.W. was covered by a Group Care Connect Gold HMO plan (R.W.'s Plan) issued by New Mexico Health Connections (NMHC). (*Id.* ¶ 28.) On May 3, 2016, PHI submitted an invoice in the amount of $46,620.00 to NMHC for the transportation services. (*Id.*) The invoiced amount consisted of a base rate of $25,678.00 plus $283.00 per loaded mile for the 74-mile trip. (*Id.* ¶ 29.) PHI was an out-of-network provider under R.W.'s Plan. (*Id.* Ex. C.) R.W.'s Plan provided that if a member requires emergency services from an out-of-network provider, NMHC will cover those services at the in-network benefit level. (*Id.*) Hence, R.W.'s Plan covered out-of-network services up to the "usual, customary, and reasonable amount" as determined by NMHC. (*Id.*; Compl. Ex. C at 2.) Under R.W.'s Plan, R.W. is required to pay a $100 co-pay to NMHC for PHI's services, and R.W. made that co-payment. (*Id.*) NMHC paid PHI $15,658.86, using a base rate of $13,808.86 plus $25.00 per loaded mile, which is its usual, customary, and reasonable rate for helicopter transport. (*Id.* ¶ 30; Ex. C.)[3] The unpaid balance of PHI's invoice is $30,961.14. (*Id.* Ex. C.)

1. Internal Review with NMHC.

PHI, using NMHC's internal review process, appealed the deficient reimbursement. (*Id.* ¶ 31.) NMHC denied PHI's request for additional reimbursement. (*Id.*) PHI then billed R.W. for the unpaid balance. (*Id.*)

---

[3] In Bulletin 2017-009, the OSI noted that R.W.'s representative, Frank Melendez, an employee benefits manager with Berger-Briggs Insurance, opined that the payment from R.W.'s Plan was based on the Medicare reimbursement rate table. (Compl. Ex. E.)

2. External Review with the OSI.

On January 25, 2017, R.W. filed an external review request with the OSI under 13.10.17.23 NMAC. *[R.W.] v. NMHC*, OSI File No. 17-0086-EXTR-ADMIN. (*Id.* ¶ 32.) R.W. disputed the decision by NMHC to partially deny coverage for "emergency air transport services supplied by [PHI]." (Compl. Ex. C.) PHI was not a party to the external review proceeding. The OSI issued an ORDER GRANTING REQUEST FOR EXTERNAL REVIEW (Compl. Ex. C) (R.W.'s Order). In R.W.'s Order, the OSI determined that "[t]he New Mexico Patient Protection Act requires that managed health care plans shall provide reasonable access to health care services including access to emergency care that is immediately available without prior authorization at no additional cost to the patient. (*Id.* ¶ 17, citing NMSA 1978 § 59A-57-4(B)(3)(d)). Section 59A-57-4(B)(3)(d) states:

> B. The regulations adopted by the department [OSI] to protect patient rights shall provide at a minimum that
> …
> > (3) in providing reasonable accessible health care services that are available in a timely manner, a managed health care plan shall ensure that
> > …
> > > (d) emergency care is immediately available without prior authorization requirements, and appropriate out-of-network care is not subject to additional costs[.]

NMSA 1978 § 59A-57-4(B)(3)(d).

The OSI noted that NMHC did not dispute that emergency transport was medically appropriate and necessary, and also observed that NMHC made partial payment for the charges in the amount of $15,658.86, "which it considers to be the usual, customary and reasonable charges for the service." (Compl. Ex. C at p. 2.) The OSI discussed PHI's claim against NMHC on R.W.'s behalf requesting that NMHC reconsider its payment decision, and the OSI recognized that NMHC had denied that claim and that PHI "continues to seek payment for the

4

balance of the bill from [R.W.]" (*Id.*) The OSI stated that the Superintendent has been asked to determine whether R.W. or NMHC "is responsible for the balance due on [PHI's] invoice." (*Id.* at p. 5.) In the order portion of the opinion, the OSI determined that because R.W. had paid NMHC the $100 co-pay under R.W.'s Plan, and because the NMPPA "prevents balance billing for emergency services beyond the contractual cost sharing provision of a plan," R.W. was not responsible for the balance due on PHI's invoice. (*Id.* at p. 5.) However, the OSI also determined that since the OSI "does not have jurisdiction over contractual matters between carriers and providers," the OSI made "no determination about whether NMHC was responsible for the balance due on [PHI's] invoice." (*Id.*)

B.  R.C. transported from Socorro, N.M. to Albuquerque, N.M.

On June 7, 2016, PHI provided emergency air transportation services to R.C. from Socorro, New Mexico to Lovelace Women's Hospital in Albuquerque, New Mexico after R.C. suffered an episode of diabetic ketoacidosis. (*Id.* ¶ 35.) R.C. was covered by NMHC's Group Care Connect Gold HMO (R.C.'s Plan). (*Id.* ¶ 36, Ex. D.) On June 27, 2016, PHI submitted an invoice for the transportation services to NMHC in the amount of $47,186.00, using the same base rate and mileage rate for R.C.'s 76-mile trip that had been used for R.W.'s 74-mile trip. (*Id.* ¶ 37, Ex. D.) PHI was an out-of-network provider under R.C.'s Plan. (*Id.* Ex. D.) NMHC reimbursed PHI in the amount of $15,708.86 based on its determination of the usual, customary, and reasonable charge for helicopter transport. (*Id.* ¶ 38, Ex. D.) The unpaid balance of PHI's invoice is $31,377.14. (*Id.* Ex. D.) Like R.W., R.C. was required to pay a $100 co-pay to NMHC for PHI's emergency transport services, and R.C. made that co-payment. (*Id.* Ex. D.)

1.        Internal Review

PHI appealed the deficient reimbursement internally with NMHC. PHI also filed on January 10, 2017 a grievance with the OSI regarding underpayment. NMHC refused to pay PHI any additional reimbursement. Accordingly, PHI billed R.C. for the balance due. (*Id.* ¶ 39.)

2.        External Review

On January 24, 2017, R.C. filed an external review request with the OSI under 13.10.17.23 NMAC. (*Id.* ¶ 40.) *[R.C.] v. New Mexico Health Connections*, OSI File No. 17-00066-EXTR-ADMIN. PHI was not a party to the external review proceeding. On August 7, 2017, the OSI issued the ORDER GRANTING REQUEST FOR EXTERNAL REVIEW (Compl. Ex. D) (R.C.'s Order). In R.C.'s Order, the OSI determined that under NMSA 1978 § 59A-57-4(B)(3)(d) a health insurer cannot impose additional cost on an insured for appropriate out-of-network emergency care. (*Id.* ¶ 41, Ex. D.) The OSI observed that NMHC did not dispute that emergency transport was medically appropriate and necessary, and also noted that NMHC made partial payment for the charges. (*Id.* at p. 3.) The OSI recognized that NMHC denied that claim and that PHI "is seeking payment for the balance of the bill from [R.C.]" (*Id.* at p. 5.) The OSI decided that because R.C. had paid the required $100 co-pay, R.C. was not responsible for the balance due on PHI's invoice. (*Id.*) The OSI stated that the OSI "does not have jurisdiction over contractual matters between carriers and providers," therefore, the OSI made "no determination about whether NMHC was responsible for the balance due on [PHI's] invoice." (*Id.*)

Nobably the OSI did not determine in either R.W.'s Order or R.C.'s Order that PHI was in violation of the NMPPA's prohibition of balance billing. In those orders, the OSI ruled only

that as between the patient and the insurer, the patient was not responsible for the balance due on PHI's invoice.

        C.        OSI Bulletin 2017-009

On July 31, 2017 the OSI issued a bulletin to ALL HEALTH CARE PLANS THAT OFFER COVERAGE OF EMERGENGY HEALTH CARE SERVICES OTHER THAN ON AN INDEMNITY BASIS (Bulletin). (Compl. Ex. E.) The bulletin interpreted several New Mexico Insurance Code requirements for health insurance carriers offering emergency care coverage in New Mexico: NMSA 1978 §§ 59A-2-8 (powers of the Superintendent), 59A-2-10 (orders effective when signed by Superintendent), 59A-4-3 (allowing Superintendent to direct an inquiry into any person subject to supervision under the Insurance Code), 59A-22A-5 (governing preferred provider plans), 59A-57-4 (governing managed health care plans), and 13.1.2. *et seq*. NMAC (governing the issuance of Bulletins) and 13.10.21.8(D)(6) NMAC (governing HMOs).

In the Bulletin, Superintendent Franchini interpreted NMSA §§ 59A-57-4(B)(3)(d), 59A-22A-5, and 13.10.21.8(D)(6) NMAC:

> The New Mexico Patient Protection Act (NMPPA) requires that managed health care plans provide "emergency care [that is] immediately available without prior authorization requirements, and appropriate out-of-network emergency care is not subject to additional costs" to the covered person. See Section 59A-57-4(B)(3)(d) NMSA 1978 (emphasis added). Additionally, New Mexico's Preferred Provider Arrangements Law (NMPPAL) requires health benefit plans with preferred provider arrangements to include a provision that "if a covered person receives emergency care for services specified in the preferred provider arrangement and cannot reasonably reach a preferred provider that emergency care rendered during the course of the emergency will be reimbursed as though the covered person had been treated by a preferred provider." See Section 59A-22A(A)(1) NMSA 1978. Both the NMPPA and the NMPPAL provide these protections with respect to out-of-network emergency services and therefore prohibit balance billing for out-of-network emergency care for persons covered by managed health care and preferred provider plans.

> The same protection is extended to subscribers covered by HMO plans. These regulations require "appropriate out-of-network emergency care shall be provided to a covered person without additional cost." See 13.10.21.8(D)(6) NMAC.
> Accordingly, the [OSI] interprets Sections 59A-4(B)(3)(d) and 59A-22A-5, and 13.10.21.8(D)(6) NMAC to require insurers to hold their covered persons harmless for balance bills for out-of-network emergency care services. Nothing in this bulletin shall be interpreted to require insurers to pay for non-emergent care provided to covered persons at out-of-network emergency facilities.

(*Id.*)

II. SUBJECT MATTER JURISDICTION

In the Complaint, PHI invokes the Court's subject matter jurisdiction under 28 U.S.C. § 1331[4] and asks the Court to enter a judgment declaring that the ADA preempts the New Mexico statutes and regulations as enforced by the OSI Defendants. (Compl. ¶ 11.)[5] In the Counterclaim, the OSI Defendants invoke this Court's jurisdiction under the Declaratory Judgments Act 28 U.S.C. § 2201[6] asking the Court to enter a judgment declaring that PHI "is subject to NMSA 1978 § 59A-57-4(B)(3)(d), … that [the provision] is not preempted by the ADA, [and] … that [PHI] may not engage in the practice of Balance Billing for its emergency services provided to a covered person[.]" (Countercl. at p. 10.) The OSI Defendants claim that the "OSI continues to

---

[4] PHI also claims this Court has jurisdiction under 28 U.S.C. § 1337 because this case arises under the ADA, which is an act of Congress regulating interstate commerce. However, since 1980, when Congress broadened the scope of § 1331 by eliminating the amount in controversy requirement, § 1337 and similar specific statutes granting federal jurisdiction have become unnecessarily redundant. *See Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 580 (7th Cir. 1991) *See also Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) ("[B]ecause the phrase 'arising under' has the same meaning in both statutes, § 1337 is superfluous.") (quoting 13D Charles Alan Wright, et al., Federal Practice & Procedure § 3574 (3d ed., April 2013 update) (footnotes omitted)).

[5] In the Prayer for Relief, PHI asks the Court to enter a declaratory judgment in its favor against the OSI Defendants that "pursuant to the preemption provision of the ADA, the Insurance Laws as applied by the OSI Defendants do not prohibit out-of-network air ambulance providers from Balance Billing patients[.]" (*Id.* at p. 11.) PHI also asks the Court to enter declaratory judgment in favor of PHI against the OSI Defendants "that the Insurance Laws, and any other section, rule, or regulation that OSI attempts to enforce to limit the price or rate for PHI's Transportation Services, are preempted, inapplicable and unenforceable as they relate to air carriers, like PHI, and to permanently enjoin the OSI Defendants from enforcing such statutes and regulations against air carriers, like PHI, that hold a Part 135 Air Carrier Certificate." (*Id.*)

[6] The Declaratory Judgments Act provides: "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201.

review claims involving Balance Billing, and OSI has continued, and will continue, to apply NMSA 1978 § 59A-57-4(B)(3)(d) to prohibit Balance Billing." (Countercl. ¶ 10.) Both PHI and the OSI Defendants assert that an actual dispute exists regarding whether the OSI Defendants "can enforce the Insurance Laws to prevent PHI from Balance Billing." (*Id.* ¶ 48.) Although the parties have not raised the issue, the Court must satisfy itself that it has subject matter jurisdiction over the Complaint and the Counterclaim. That includes an analysis of PHI's standing to bring the claims and the OSI Defendants' standing to bring the Counterclaim.

Federal courts have jurisdiction under 28 U.S.C. § 1331 to hear cases in which claimants seek to enjoin allegedly preempted state regulation. *See Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."). *See also Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (citation omitted) (quoting *Shaw, supra*). Under the Declaratory Judgments Act, "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201.

To invoke this Court's subject matter jurisdiction and obtain either injunctive or declaratory relief, however, the parties must present a justiciable case or controversy. *New England Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008). To satisfy the 'case or controversy' requirement, a request for relief must settle "some dispute which affects the behavior of the defendant toward the plaintiff." *Hewitt v. Helms,* 482

U.S. 755, 761 (1987) The Tenth Circuit Court of Appeals observed that a claimant's standing to assert a claim for relief is an integral part of a justiciable controversy:

> As an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a "case of controversy" that may be resolved by the federal courts. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between that injury and the challenged action of the defendant—the injury must be "fairly traceable" to the defendant, and not the result of the independent action of some third party. Finally, it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury.

*Nova Health Systems v. Gandy*, 416 F.3d 1149, 1153–54 (10th Cir. 2005) (citations omitted) (holding that plaintiff lacked standing because it had not shown that the injury it may have suffered due to the challenged Oklahoma law was caused by the defendants or that it would be redressed by a judgment against them). For jurisdictional purposes, the Court must determine whether PHI faces a concrete and actual or imminent injury-in-fact caused by the OSI Defendants that is redressable by a favorable order from this Court. *Id.* at 1155. Conversely, the OSI Defendants must show that their regulatory authority would be vindicated by a ruling in their favor. *See Skull Valley Band of Goshute Indians v. Leavitt*, 215 F.Supp.2d 1232, 1252 (D. Utah 2002) (finding that state defendants lacked standing to bring counterclaim that an agreement was invalid because they were not parties to the agreement at issue: "Utah has no role in protecting the Skull Valley Band or [Private Fuel Storage, LLC].").

        A.    PHI's Claims.

The Court recognizes that PHI's injury-in-fact is partial non-payment for emergency transport services and its purported inability to balance bill patients. However, PHI has failed to allege that the OSI Defendants caused those injuries. In administrative proceedings brought by R.W. or R.C. against NMHC, the Superintendent decided that the NMPPA "prevents balance

billing for emergency services beyond the contractual cost sharing provisions of a plan[;]" therefore, the Superintendent determined that R.W. and R.C. were "not responsible for the balance due on [PHI's] invoice." (Compl. Ex. C, Ex. D.) That decision was a declaration that as between the patients and NMHC, the patients are not responsible for the balance due on PHI's invoice. The Superintendent made no determination as to PHI's ability to collect additional reimbursement from NMHC or from the patients. The Superintendent tacitly acknowledged the limits of the OSI's authority in its statement that it did not have jurisdiction over matters between carriers and providers. Thus, the Superintendent specifically did not determine "whether [NMHC] is responsible for the balance due on [PHI's] invoice." (*Id.*)

In the Bulletin, the Superintendent opined that New Mexico statutory law prohibits balance billing for out-of-network emergency care for persons covered by managed care plans. The Superintendent also determined that insurance carriers must hold their covered persons harmless for the cost of out-of-network emergency services. (Compl. Ex. E.) The OSI, therefore, decided that insurers, not patients, are liable for unreimbursed costs incurred for emergency services. The OSI's decisions concerning R.W. and R.C. and the OSI's pronouncements in the Bulletin are directed at insurers and patients. Consequently, PHI has failed to show that the OSI Defendants' enforcement of New Mexico insurance law have caused or will cause PHI's asserted injuries.[7] PHI was not a party to the OSI external review proceedings, and the Bulletin was addressed to "All Health Care Plans That Offer Coverage of Emergency Health Care Services

---

[7] Under NMSA 1978 § 59A-2-1, "[a]ll powers relating to state supervision of insurance, insurance rates and rate practices, together with collection of insurance licenses, taxes or fees, and all records pertaining to such supervision are under control of the office of the superintendent of insurance." The OSI has the authority to "enforce those provisions of the Insurance Code that are administered by the superintendent;" and the OSI has "the powers and authority expressly conferred by or reasonably implied from the provisions of the Insurance Code[.]" NMSA 1978 § 59A-2-8. The Superintendent "may invoke the aid of any court of competent jurisdiction through injunction, mandamus or other appropriate process to enjoin any existing or threatening violation of any provision of the Insurance Code or to enforce any order made or action taken by him in pursuance of law." NMSA 1978 § 59A-2-11(A).

Other Than on an Indemnity Basis." (Comp. Ex. E.) In short, the Complaint fails to establish that the OSI Defendants have the power to enforce the balance billing prohibition against PHI or any other provider.

In contrast, the United States District Court in Wyoming exercised jurisdiction over the claims of an air ambulance provider, EagleMed, against the Wyoming Workers' Compensation Division (Division) and its officials. *EagleMed, LLC v. Wyoming ex rel. Dept. of Workforce*, 227 F.Supp.3d 1255, 1262 (D. Wyo. 2016) *aff'd in relevant part EagleMed, LLC v. Cox*, 868 F.3d 893 (10th Cir. 2017). The court examined the statutes requiring the Division to "allow a reasonably charge for the ambulance service at a rate not in excess of the rate schedule established by the director under the procedure set forth for payment of medical and hospital care." *Id.* (citing Wyo. Stat. § 27-14-401(e)). From 2012 through 2014, EagleMed had submitted bills to the Division for air ambulance services charging the Division a much higher rate than the regulatory rate. *Id.* However, the Division paid EagleMed only the regulatory rate. *Id.* EagleMed sued the Division and its officials *inter alia* for a judgment declaring that the statute allowing the Division to establish a rate schedule statute was preempted by the ADA. *Id.* 1262-63. The Division had argued that EagleMed had not presented a case or controversy sufficient for jurisdiction under the Declaratory Judgments Act, 28 U.S.C. § 2201. The court observed: "Federal courts have consistently found a case or controversy in suits between state officials charged with enforcing a law and private parties potentially subject to enforcement. So long as the plaintiff faces a credible threat of enforcement, redressability is generally not an obstacle…." *Id.* at 1268 (quoting *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 905 (10th Cir. 2012)). Under Wyoming law, payment for EagleMed's services was directly within the Division's control. *Id.* "The fee schedule has been enforced against [EagleMed], and they have challenged

enforcement at the Division level, only to have that case stayed pending the outcome of this action." *Id.* The district court concluded that "[u]nder the … statutory and regulatory scheme, the air ambulance entities are limited in the amount of compensation they may receive for their services by the Division's fee schedule as implemented by the defendants." *Id.* at 1275. The court recognized that the Division's adherence to the rate schedule caused EagleMed's injury, which was redressable by a favorable judgment. *Id.* The court acknowledged that if the Wyoming statute and regulations were preempted, the defendants could not continue to enforce the rate schedule, "which in turn would cause the Division to pay the billed rate or seek the Wyoming Legislature's amendment of the statutes[.]" *Id. See also Valley Med Flight, Inc. v. Dwelle*, 171 F.Supp.3d 930, 941–943 (D. N.D. 2016) (holding that North Dakota statutes administered by health department requiring air ambulance providers to become participating providers with a certain percentage of insurers doing business in North Dakota and statutes mandating fee schedules for workers' compensation were preempted under the ADA).

By contrast, under NMSA 1978 § 59A-57-4(B)(3)(d), the OSI is required to protect patients by regulating insurers who issue managed health care plans. Specifically, the OSI must issue regulations requiring insurers to "ensure that patients are able to receive appropriate out-of-network emergency care at no additional cost." *Id.* Under this statutory language, the OSI may enforce the "no additional cost" requirements against insurers, but the statute contains no language allowing the OSI to enforce the "no additional cost" provision against the providers of those out-of-network emergency services. In the Bulletin, the Superintendent interpreted this statutory language as a requirement that insurers like NMHC must hold their covered persons harmless for the additional cost of out-of-network emergency services. Therefore, it is NMHC, not the OSI, which can redress PHI's injury. In short, PHI has not shown that the OSI

Defendants have caused PHI to incur an actual redressable injury. Consequently, PHI lacks standing to sue the OSI Defendants for injunctive and declaratory relief.[8]

### B. The OSI Defendants' Counterclaim

The OSI Defendants' Counterclaim asks the Court to declare that PHI is subject to NMSA 1978 § 59A-57-4(B)(3)(d), that § 59A-57-4(B)(3)(d) is not preempted by the ADA, and that PHI may not balance bill patients covered by managed health care plans. As discussed above, even though the OSI Defendants contend that the OSI will continue to apply the statute to prohibit balance billing, the OSI fails to establish that it has the power to enforce against PHI, which is not an insurer, the prohibition of balance billing.[9] Simply put, the statutes and regulation cited by the OSI do not directly grant the OSI the power to enforce the balance billing prohibition against **providers** like PHI. Instead, the OSI relied upon these statutes and regulation as the source of a covered patient's right to have the patient's **insurer** hold the patient harmless for balance bills. Hence, if R.W. and R.C. take advantage of the OSI's determination that NMHC must hold them harmless from PHI's balance bills, the OSI will incur no injury that needs to be redressed by this Court. In sum, PHI's injury and the OSI's perceived injury cannot be redressed by a judgment on PHI's claims and the OSI's Counterclaim.

---

[8] The Court notes that even if the Court had jurisdiction, under Rule 19, NMHC and perhaps R.W. and R.C. may have to be joined as parties to afford complete relief.

[9] As one court observed:

> The Superintendent of Insurance is the director of the insurance division of the Public Regulation Commission, see N.M.S.A.1978, § 8–8–9, which "shall administer and enforce the laws with which it is charged and has every power conferred by law," N.M.S.A.1978, § 8–8–4. Under New Mexico law, the Superintendent of Insurance has the authority to make "reasonable rules and regulations necessary for or as an aid to administration or effectuation of any provision of the Insurance Code." N.M.S.A.1978, § 59A–2–9. The Insurance Division maintains all powers "relating to state supervision of insurance, insurance rates and rate practices." N.M.S.A.1978, § 59A–2–1.

*Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1193 (D. N.M. 2012).

IT IS ORDERED that PHI's claims asserted in the COMPLAINT (Doc. No. 1) and the Counterclaim asserted in the OSI Defendants' ANSWER TO COMPLAINT [Doc. 1] AND COUNTERCLAIM FOR DECLARATORY JUDGMENT (Doc. No. 10) will be dismissed without prejudice for lack of subject matter jurisdiction.

_____
SENIOR UNITED STATES DISTRICT JUDGE